## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OSCAR BROWNFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-312- GLJ |
| | ) | |
| CHEROKEE COUNTY SCHOOL | ) | |
| DISTRICT NO. 35 a/k/a | ) | |
| TAHLEQUAH PUBLIC SCHOOLS, | ) | |
| LEON ASHLOCK, MAT CLOUD, | ) | |
| and DEANN MASHBURN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Oscar Brownfield filed this action against Defendants Independent School District No. 35 a/k/a Tahlequah Public Schools ("TPS"), Leon Ashlock, Mat Cloud, and Deann Mashburn,[1] arising out of his experiences with the school district as a volunteer youth wrestling coach and substitute teacher. Plaintiff alleges claims under Title IX, Title VII, and the First Amendment pursuant to 42 U.S.C. § 1983. This matter is now before the Court on dueling motions for summary judgment filed by all Defendants and Plaintiff. For the reasons set forth below, the Court finds that the School District Defendants' Combined Motion for Summary Judgment and Brief in Support [Docket No. 144] is granted as to all claims *except* Plaintiff's claim for Title IX retaliation as to TPS, and that

---

[1] Defendants previously dismissed Natalie Cloud, individually; Kimberly Williams; Leon Ashlock, in his official capacity as superintendent; and Tahlequah Public Schools Boad of Education.

Plaintiff's Motion for Summary Judgment [Docket No. 171] is denied. Additionally, the undersigned Magistrate Judge holds Plaintiff's Motion for Sanctions under Fed. R. Civ. P. 11 and Integrated Brief [Docket No. 158] in abeyance pending the show cause hearing set for Tuesday, March 17, 2026.

## Procedural History

Plaintiff filed this case on September 10, 2021, in Oklahoma state court in Cherokee County, Case No. 21-cj-98, against TPS and Defendant Ashlock. Defendants removed the case to this Court on October 18, 2021 [Docket Nos. 1-2]. The named Defendants then filed a partial motion to dismiss, and the Court invited Plaintiff to file an Amended Complaint, which Plaintiff did on November 11, 2021. *See* Docket Nos. 8, 10-11. Defendants then filed another partial motion to dismiss [Docket No. 13] on November 29, 2021. In May 2022, Plaintiff's counsel were given leave to withdraw from representing the Plaintiff, and Plaintiff entered an appearance pro se [Docket Nos. 33-38]. In August 2022, Plaintiff, proceeding pro se, moved for leave to file a Second Amended Complaint [Docket No. 48], which the undersigned Magistrate Judge granted in part on October 24, 2022, while denying the partial Motion to Dismiss [Docket No. 13] as moot [Docket No. 53]. Plaintiff then filed his Second Amended Complaint [Docket No. 55], which named Mat Cloud ("Cloud"), Deann Mashburn, Natalie Cloud, and Kimberly Williams, in addition to the previously-named Defendants. All named Defendants moved for full or partial motions to dismiss the Second Amended Complaint. *See* Docket Nos. 65, 66, 70, 75.

2

Plaintiff originally alleged seven causes of action in his Second Amended Complaint. Defendants raised full or partial challenges to three of those counts, and the undersigned Magistrate Judge recommended granting those motions in full on January 18, 2023 [Docket No. 86]. On April 7, 2025,[2] the Court adopted these recommendations [Docket No. 122]. Following the adoption of the Report and Recommendation, the following claims remain pending against certain Defendants: (1) retaliation pursuant to Title IX against TPS (Count I); (2) violation of the First Amendment, pursuant to 42 U.S.C. § 1983 against TPS and individual Defendants Ashlock, Mashburn, and Mr. Cloud (Count II); (3) retaliation pursuant to Title VII as to TPS (Count V); (4) First Amendment retaliation, pursuant to § 1983 as to Mr. Cloud (Count VI); and (5) First Amendment retaliation pursuant to § 1983 as to TPS (Count VII). Defendants' Combined Motion for Summary Judgment moves for summary judgment on all remaining claims. Plaintiff's Motion for Summary Judgment contends the evidence is so far in his favor that no reasonable jury could conclude otherwise, and that he should be granted summary

---

[2] The Northern and Eastern Districts of Oklahoma have experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt. Oklahoma v. Castro-Huerta*, 597 U.S. 629, 635 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *affirmed* 76 F.4th 1007 (10th Cir. 2023).

judgment on all remaining claims based on a lack of genuine dispute for trial. The undersigned Magistrate Judge makes the following findings.

## Background

The undisputed facts in this case reflect that, prior to the fall of 2019, Plaintiff was a youth wrestling coach for Boys and Girls Club of Tahlequah ("BGC"). Plaintiff asserts, in contradiction to TPS, that TPS high school wrestling coach Travis Kirby, and by extension TPS, had control over staffing and access, despite the affiliation with BGC.

On September 7, 2019, Plaintiff wrote a Facebook post complaining that TPS female student athletes were treated differently than male student athletes.[3] That same day, Cloud, who is TPS' athletic director, emailed Plaintiff to say, "Please be careful of the public accusations before you know all the facts." Plaintiff wrote back that the "post has been removed for now." Docket Nos. 144, p. 10, ¶¶ 7-8 & Ex. 4-5; 174, p. 7, ¶¶ 7-8. Plaintiff made a Title IX complaint on September 11, 2019, during a meeting with TPS Superintendent Ashlock, Title IX coordinator Mashburn, and Cloud. At that time, he alleged discrimination against female athletes occurring primarily by three coaches at the high school. Docket No. 144, p. 11, ¶ 10. Plaintiff alleges that, following his Title IX complaint, Coach Kirby was no longer as friendly with him and that TPS instructed Kirby to stop associating with him.

Following the Title IX complaint, Plaintiff made a request for a board hearing, and Superintendent Ashlock emailed Plaintiff on October 9, 2019, notifying him that the

---

[3] Plaintiff's minor daughter attended TPS at the time.

Board would be addressing a letter on October 10, responding to Plaintiff's criticisms regarding the Title IX investigation, and discussing Plaintiff's behavior toward others in recent days, stating, "Continuation of misconduct directed at staff members of this district will result in issuance of an order prohibiting you from being on the district's campus or at its events," advising him to "stay away from AD Cloud, Mrs. Cloud, and Mr. Ogden, and discontinue any attempts of intimidation of any staff member of any behavior with the intent of 'baiting' our staff to respond negatively to you."  Docket Nos. 144, pp. 12-13, ¶ 20 & Ex. 12; No. 174, p. 8, ¶ 20.  Plaintiff alleges this letter violates his First Amendment right to freedom of speech and to petition the government.

Plaintiff then filed a complaint with the Office of Civil Rights ("OCR").  In April 2020, Plaintiff entered into a Resolution Agreement with TPS, in which:  (1) Plaintiff was afforded the opportunity to appeal the Title IX investigation decision, (2) TPS would remove the October 9, 2019, letter/email from TPS district records, and (3) Plaintiff would withdraw his OCR complaint.  Docket No. 144, p. 13, ¶¶ 22-25 & Ex. 13; 174, p. 8, ¶¶ 22-25.  Plaintiff withdrew his OCR Complaint.  Docket No. 144, Ex. 13, p. 3.  TPS School Board considered Plaintiff's Title IX appeal at a Special Meeting on May 14, 2020.  *Id.*, Ex. 14.

The undisputed facts further reflect that Plaintiff worked as a substitute teacher with TPS from time to time beginning in February 2019.  *See* Docket No. 144, pp. 9-10, ¶¶ 1-3 & Docket No. 174, p. 7, ¶¶ 1-3.  TPS paid Plaintiff for the substitute teaching work only; by inference, TPS did not pay Plaintiff for his youth wrestling coach position.  Docket Nos. 144, p. 4, ¶ 4 & 174, p. 7, ¶ 4.  At some point, Plaintiff was removed from

the substitute teaching list.  Plaintiff alleges this removal was in retaliation for his Title IX complaint.  Docket Nos. 144, p. 16, ¶ 43 & 174, p. 10, ¶ 43.

In April 2021, TPS posted a job for a secondary social studies teacher with coaching duties, Posting ID 384.  The qualifications identified included "Bachelors degree with certification in Secondary Social Studies Grades 6-12."  Docket Nos. 144, p. 15, ¶¶ 32-33 & 174, p. 9, ¶¶ 32-33.  Plaintiff does not hold an Oklahoma teaching certificate. Plaintiff emailed Cloud to express interest in seeking an "adjunct or lay coaching position" regarding "the vacant assistant wrestling coach and girls wrestling coach positions." Docket No. 144, Ex. 17.  Plaintiff contends he was responding to a different posting from the Oklahoma Coaches Association job board.  He identifies the job post as ID 384 as well, but attaches an one-page printout of multiple job postings and a summary description of a position at TPS which states, in part:  "[TPS] is currently accepting applications for the following positions:  Head HS Baseball Coach, Assistant HS Baseball coach, 9th grade football (2 positions), HS girls wrestling, HS assistant wrestling coach.  Teaching field to be determined. . . . Please send resume, transcripts, Oklahoma teaching certificate[.]" Docket No. 170, Ex. 12.  TPS interviewed three candidates for the position, none of them Plaintiff.  The candidate ultimately chosen was interviewed on June 8, 2021, and recommended on June 10, 2021.  He was issued alternative certification in physical education/heath/safety, U.S. History/OK History/Government/Economics, and World History/Geography.  The effective date of the certification was June 1, 2021.  Docket No. 133, Ex. 19-20.  One other candidate was certified in Biological Sciences, and one was

degreed but not certified.  Docket No. 170, Ex. 14, p. 7.  Plaintiff alleges he was not hired in retaliation for his Title IX complaint.  Docket Nos. 143, p. 17, ¶ 44 & 174, p. 11, ¶ 44.

Plaintiff disputes any assertion by Defendants that Cloud did not influence others regarding their association with Plaintiff.  He further disputes Defendants' assertion that the Title IX investigation was conducted, much less that it was thorough, and that no one retaliated against him.  Plaintiff further disputes allegations that Plaintiff said, "Hey there, Boss Hog," in front of another witness, or that Plaintiff sat behind Cloud's wife and others at a football game on October 4, 2019, openly discussed Cloud and the Title IX investigation, and followed Cloud's wife after she left for the restroom.  Docket Nos. 144, pp. 11-12, ¶¶ 14, 16-19 & 174, p. 8, ¶¶ 14, 16-19.  Plaintiff also contends that TPS did not give him proper notice or consideration of his Title IX appeal, and that TPS officials assisted respondents in their presentation while "suppressing Plaintiff's participation."  Docket No. 174, p. 8, ¶ 26.[4]  The parties likewise dispute when and why Plaintiff was struck from the substitute teaching list.

### Summary Judgment Standard

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party must show

---

[4] Any challenge to the process related to the underlying Title IX complaint itself has previously been dismissed.

7

the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

In employment discrimination cases, "[m]any of the highly fact-sensitive determinations involved in these cases are best left for trial and are within the province of the jury." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015). "The rule in this Circuit . . . is that an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's proffered reason for the employment action." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part) (citing *Randle v. City of Aurora,* 69 F.3d 441, 451-452 & n. 15 (10th Cir. 1995) ("[I]f this inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

Finally, because Plaintiff is proceeding *pro se*, the undersigned Magistrate Judge liberally construes his pleadings. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (requiring courts to liberally construe a *pro se* litigant's pleadings); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (a court construes a *pro se* party's pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted

8

by lawyers.").  Although *pro se* pleadings are held to a less stringent standard than ones drafted by lawyers, a *pro se* litigant must "'follow the same rules of procedure that govern other litigants.'"  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Furthermore, the Tenth Circuit "does not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."  *Hall*, 935 F.2d at 1110.

## Analysis

### I.    Defendants' Motion for Summary Judgment

TPS contends that it did not retaliate against Plaintiff for making a Title IX complaint, taking no material adverse action based on the protected activity (Count I). All Defendants contend summary judgment should be granted on Plaintiff's § 1983 claim for a violation of Plaintiff's First Amendment rights of freedom of speech, petition, and assembly because Plaintiff fails to establish a constitutional violation by any remaining Defendant (Count II).  Further, TPS contends that it did not retaliate against Plaintiff under Title VII by failing to hire him for a social studies teaching position in 2021 (Count V).  Finally, TPS and Cloud argue they did not retaliate against Plaintiff for exercising his First Amendment rights to free speech and petition (Counts VI & VII).  Plaintiff contends summary judgment should be denied because evidence shows Defendants' actions were pretextual for purposes of Title IX and Title VII, and that Defendants' retaliatory motive is an issue for his First Amendment claim.

### A.  Count I – Title IX Retaliation (TPS)

Title IX provides that "[n]o person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Where sex-based discrimination is intentional, Title IX is enforceable through a cause of action for which money damages are available.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

Where, as here, a Title IX plaintiff relies on indirect proof of discrimination, we apply the three-part burden-shifting framework announced in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-805 (1973); *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 n.8 (10th Cir. 2017) ("The *McDonnell Douglas* framework applies" to "Title IX sex discrimination claims.").  "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff has his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985).  Under this framework:

> "[A] plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted).  The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.*  If the employer does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief." *Id.* (internal quotation marks omitted).

*Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).  "[T]o set out a *prima facie* case of retaliation under Title IX, []he must show (1) []he engaged in protected activity, (2) []he suffered an adverse action, and (3) a causal connection existed between the protected activity and the adverse action." *Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cnty.*, 2018

WL 6419296, at *6 (E.D. Okla. Dec. 6, 2018) (citing *Hiatt*, 858 F.3d at 1316). Defendant's burden at the second stage to offer a legitimate nondiscriminatory reason is a burden of production, not persuasion. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons."). The burden then returns to Plaintiff on the issue of pretext.

As to the prima facie case, TPS agrees that Plaintiff engaged in protected activity when he filed a Title IX complaint. Plaintiff alleges the materially adverse actions against him included preventing him from continuing to coach the youth wrestling program, the October 2019 letter sent to Plaintiff by Ashlock, and his removal from the TPS substitute teacher list. TPS argues, however, that it did not take a materially adverse action against Plaintiff because TPS did not operate the youth wrestling program, the October 2019 letter was not a materially adverse action, and Plaintiff remained on the substitute list for TPS.

The undersigned Magistrate first finds that the October 2019 letter was not a material adverse action. The letter notified Plaintiff of the information for his requested board meeting and instructed him regarding behavior toward coaches and their family members. "[A]n action is 'materially adverse' if it is "sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity." *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 645 F. Supp. 3d 1134, 1162 (D. Kan. 2022), *affirmed*, 94 F.4th 936 (10th Cir. 2024). While not unrelated to the Title IX claim,

as the requested Title IX hearing with the School Board is discussed in the letter, the letter does not constitute an action that would dissuade a reasonable person from engaging in protected activity. Furthermore, Plaintiff makes no argument in his response that the letter itself constitutes a material adverse action, while he maintains that his removal from youth coach wrestling and the substitute teaching list were material adverse actions.

As to Plaintiff's positions as a youth wrestling coach and a substitute teacher, the undersigned Magistrate Judge finds that genuine issues of material fact remain upon application of the *McDonnell Douglas* burden-shifting test. A genuine dispute remains as to whether TPS influenced/controlled the youth wrestling program and Plaintiff's removal therefrom despite being operated by the Boys and Girls Club in name. Likewise, a dispute remains as to when and how Plaintiff was removed from the substitute teaching list. TPS contends that it did not operate the youth wrestling club, and that Plaintiff remained on the substitute teaching list. But Plaintiff raises genuine questions as to whether TPS leadership influenced decisions made with regard to the youth wrestling club coach position, and Plaintiff further raises a genuine dispute as to why the site employees removed his name from the substitute list despite TPS issuing letters of assurance that he remained on the list. Accordingly, summary judgment for Plaintiff's Title IX claim against TPS (Count I) is denied on the issues of removal from the youth wrestling coach position and removal from the substitute teaching list only. The motion is otherwise granted as to Count 1.

## B. Count IV – Title VII Retaliation (TPS Only)

As with the Title IX retaliation claims, to survive summary judgment on a Title VII

retaliation claim, the Court applies the *McDonnell-Douglas* burden-shifting framework. "To state a prima facie Title VII retaliation claim, a plaintiff must show (1) that []he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Bekkem*, 915 F.3d at 1267 (quotation omitted). The parties agree that Plaintiff's Title IX complaint constitutes protected activity. Plaintiff alleges TPS failed to interview or hire him in 2021 due to his previously-filed 2019 Title IX complaint and the OCR complaint. TPS contends there is no material adverse action as Defendant was not qualified for the position because he did not hold a teaching certificate, and that Plaintiff failed to establish a causal connection because more than three months passed between the protected activity and the challenged action.

"A plaintiff may establish a causal connection by showing that an adverse action closely follow[ed] protected activity. [W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation, but we have held that a three-month period, standing alone, is insufficient. When a plaintiff has engaged in multiple protected activities, we measure the temporal proximity between the plaintiff's last instance of protected activity and the adverse employment action." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1339 (10th Cir. 2025) (internal quotations omitted). Plaintiff filed his Title IX complaint in September 2019. Plaintiff later filed the OCR Complaint but withdrew it on April 15, 2020, pursuant to the Resolution Agreement. His Title IX appeal was

addressed at a TPS School Board Special Meeting in May 2020. Plaintiff applied for the teaching/coaching position in April 2021. Standing alone, the time difference of over eleven months between the most recent protected activity and the challenged action is insufficient to establish a causal connection. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) ("[T]he closer [the challenged action] occurred to the protected activity, the more likely it will support . . . causation."); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) ("Four months is too large a time gap to establish a causal connection."); *Doerr v. Colorado Div. of Youth Servs.*, 95 Fed. Appx. 295, 298 (10th Cir. 2004) ("We agree with the district court, however, that the one-year time lapse is too great to draw a causal connection between his protected grievance and his termination.") (citing *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997) (holding four-month lapse between protected activity and adverse action insufficient to justify inference of causation)); *Mauldin v. Wormuth*, 713 F. Supp. 3d 1132, 1147 (E.D. Okla. 2024) ("As Plaintiff's non-selection occurred eighteen months after she submitted her statement in support of Cloud's EEO complaint, the time span between her protected activity and non-selection is too extended to infer retaliatory motive under Tenth Circuit precedent.") (ADEA retaliation), *affirmed sub nom.*, *Mauldin v. Driscoll*, 136 F.4th 984 (10th Cir. 2025).

Plaintiff attempts to overcome this time distance by Cloud's deposition testimony, which indicates that "[w]e've had ongoing grievances with you since '19," and that the "main driver" for not interviewing Plaintiff for the open teaching position was that he did not "think any sane person, if somebody was suing their employer, would bring them on

as an employee.  I think that's safe to say with anybody."  *See* Docket No. 170, Ex. 13, pp. 4, 6.  This appears sufficient to give rise to an inference of discrimination for purposes of a prima facie case.

TPS responds that its legitimate, nondiscriminatory reasons for failing to hire Plaintiff are that Plaintiff was not qualified for the position for which he applied because it is undisputed that Plaintiff did not hold a teaching certificate.  TPS ultimately hired a certified teacher.  Moreover, TPS notes that Cloud was not the sole decisionmaker for the hiring decisions.  These assertions are sufficient for this stage of the burden-shifting test.  *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) ("In the Title VII context, we have explained that 'the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.'") (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 & n.4 (10th Cir. 1992) ("[T]his stage of the analysis only requires the defendant to articulate a reason for the discipline that is not, on its face, prohibited" and that is "reasonably specific and clear.").

Plaintiff contends that his admitted lack of qualifications do not supersede TPS's retaliatory motive in excluding him from the hiring process.  Based on documentation submitted by both parties, TPS advertised for a teacher with a certification.  Plaintiff points out that the teacher ultimately hired was not certified in Social Studies, the requisite certification identified in the job posting.  Additionally, of the other two candidates interviewed, one was certified in biological sciences and one was degreed and not

certified.  Docket No. 170, Ex. 14, p. 7.  Defendant does not dispute Plaintiff's assertion that TPS could have interviewed and hired Plaintiff while he finished a certification process, but contends this fact is irrelevant.  The parties may dispute the category of certification, but there is no dispute that both listings identified certification as necessary and/or relevant, and neither party disputes that Plaintiff held no certification.  "A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951-952 (3d Cir. 1996)).  Given the facts above, the undersigned Magistrate Judge finds Plaintiff fails to meet his burden of showing that the legitimate, nondiscriminatory reasons offered by TPS for not hiring Plaintiff were a pretext for retaliation related to a protected activity.  Plaintiff has introduced no meaningful evidence that he was qualified for the position for which he applied, and any assertion that he could have become qualified (or that he later did become qualified) would have been speculation at the time of his application and throughout the hiring process. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1198 (10th Cir. 2018) ("[O]nce the employer presents evidence regarding the qualifications, prerequisites, and essential functions of a position, the burden is on the plaintiff to demonstrate that he was qualified or to rebut the employer's evidence that a qualification, prerequisite, or function was actually essential

for selection to the position. Thus, although both parties face a burden of production, the plaintiff always bears the ultimate burden of persuasion.") (internal quotation and citation omitted); *see also Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) ("[A]n inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.") (quotation omitted). TPS ultimately hired a degreed and certified teacher for the posted position, and Plaintiff has not rebutted the assertion that certification was required. Furthermore, while the hired teacher's certification does not list "Social Studies," two of his three certifications include subsets of social studies: World, U.S., and Oklahoma history; Government; Economics; and geography. Docket No. 144, Ex. 20. Accordingly, TPS is entitled to summary judgment on this claim.

## C. Counts II, VI & VII – First Amendment Retaliation (TPS, Cloud, Ashlock, and Mashburn)

The remaining portion of Plaintiff's Count II on its face raises a claim for violation of Plaintiff's First Amendment rights to free speech, petition, and association, pursuant to § 1983, as to TPS, Mashburn, Ashlock, and Cloud. Counts VI and VII allege claims of First Amendment retaliation against Cloud and TPS, respectively, and are likewise pleaded pursuant to § 1983.

"A claim pleaded under § 1983 requires (1) deprivation of a federally protected right by (2) an actor acting under color of state law." *VDARE Found v. City of Colorado Springs*, 11 F.4th 1151, 1160 (10th Cir. 2021) (internal quotation marks omitted). "The traditional definition of acting under color of state law requires that the defendant in a

§ 1983 action exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (internal quotation marks omitted).

A municipality can only be held liable under 42 U.S.C. § 1983 for the actions of its employees when the action is taken pursuant to the municipality's "official policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 692 (1978)), or for acts it has sanctioned or ordered, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (citing *Pembaur*, 475 U.S. at 480).  This is because a municipality cannot be held liable simply under a theory of respondeat superior.  *Pembaur*, 475 U.S. at 478; *see also Monell*, 436 U.S. at 694.  "Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."  *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).  Municipal policy can take the form of, among other things, "the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval."  *Brammer-Hoelter*, 602 F.3d at 1189.  Furthermore, "the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state."  *Schaffer*, 814 F.3d at 1156 (internal quotation marks omitted).  "Rather, before conduct may be fairly attributed to the state because it constitutes action under color of state law, there must be a real nexus between the

employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id.* (internal quotation marks omitted).

"Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citing *Monell*, 436 U.S. at 691). "Because vicarious liability is inapplicable to []§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). This takes the form of either personal liability through personal involvement, *or* supervisory liability based on a violation of a policy. *Brown*, 662 F.3d at 1164-1165 ("Personal liability under § 1983 must be based on . . . personal involvement, and supervisory liability must be based on his Policy."). The Tenth Circuit has interpreted this to mean that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" causing the constitutional harm. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

As an initial matter, to the extent Plaintiff has alleged a valid claim for violation of the First Amendment right to association, the undersigned Magistrate Judge finds that Defendants should now be granted summary judgment. "[T]he right of association and the right of assembly protect an individual's ability to join with others or engage in group effort for a common purpose." *Van Deelen v. Johnson*, 535 F. Supp. 2d 1227, 1232 (D. Kan. 2008) (citing *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 678 (2000) (finding ". . . [W]hen the State interferes with individuals' selection of those *with whom they wish*

*to join in a common endeavor,* freedom of association . . . may be implicated.") (emphasis added); *Cox v. State of La.,* 379 U.S. 536, 554-555 (1965); *National Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 460-461, 463 (1958) (protecting the ability of NAACP "members to pursue their collective effort to foster beliefs."); Raggi, An Independent Right to Freedom of Association, 12 HARV.C.R.–C.L.L.REV. 1, 1 (1977) (freedom of association is "little more than a shorthand phrase used by the Court to protect traditional first amendment rights of speech and petition as exercised by individuals in groups")).  The undisputed facts clearly reflect Plaintiff acting on his own, rather than attempting to act with others for a common purpose.

Additionally, while Count II alleges on its face violations of the First Amendment rights to freedom of speech and petition, the factual support provided by Plaintiff in the Second Amended Complaint and in the undisputed facts by the parties indicates that Plaintiff alleges all remaining Defendants, rather than violating his rights to free speech and petition, *retaliated* against him for exercising his right to free speech and petition due to his Facebook post, public statements to Cloud and others, and his Title IX and OCR complaints.  *See, e.g.*, Docket Nos. 55, pp. 8-13, ¶¶ 46-64 & 174, pp. 21-24.  This is the same claim more explicitly alleged against TPS and Cloud in Counts VI and VII.

"Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotation omitted); *see also Van Deelen*, 535 F. Supp. 2d at 1233-1234

("[T]he rights to free speech, peaceable assembly, expressive association and petition have been called 'inseparable.'") (quoting *Thomas v. Collins,* 323 U.S. 516, 530 (1945)). "To state a First Amendment retaliation claim, a plaintiff must allege facts showing '(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022) (quoting *Worrell*, 219 F.3d at 1212). As such, "this circuit has held that '*McDonnell Douglas* has no useful role to play in First Amendment retaliation cases.'" *Roberts v. Winder*, 16 F.4th 1367, 1381 (10th Cir. 2021) (quoting *Walton v. Powell*, 821 F.3d 1204, 1210 (10th Cir. 2016)). And as to TPS, Plaintiff "must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *McCook v. Springer School Dist.,* 44 Fed. Appx. 896, 910 (10th Cir. 2002).

Plaintiff engaged in protected activity when he made a Facebook post critical of TPS in September 2019. Plaintiff contends TPS, and particularly Ashlock and Mashburn, rushed through the Title IX investigation and failed to follow proper procedures during the Title IX investigation in retaliation for his First Amendment exercise. Furthermore, he alleges that all Defendants continued to retaliate against him for his OCR complaint. The undersigned Magistrate Judge thus turns to whether any of Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from

continuing to engage in that activity. "Generally speaking, government action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater,* 78 F.3d 484, 488 (10th Cir.1996) (citations omitted). The "chill" standard is not subjective in the context of First Amendment retaliation cases. *McCook*, 44 Fed. Appx. at 905 ("Both sides mistakenly assume the 'chill' standard is subjective, which it is not.") (citing *Smith v. Plati,* 258 F.3d 1167, 1177 (10th Cir. 2001) ("The focus, of course, is upon whether a *person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled."). The undisputed facts, as interpreted in favor of Plaintiff as the nonmoving party, do not meet the rigorous objective standard of actions that would chill a person of ordinary firmness. Indeed, many of Plaintiff's arguments as to First Amendment retaliation appear to be an attempt to again challenge the underlying process by which his Title IX complaint was handled. *See* Docket No. 174, p. 22. These allegations are insufficient as it is clear that they do not meet the high standard nor did any of the Defendants' actions, in fact, chill Plaintiff from his continued exercise of his First Amendment, and other, constitutional rights. *See Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004) ("We reaffirm with this decision that the objective standard of a person of ordinary firmness is a vigorous standard; although the standard permits a plaintiff who perseveres despite serious injury from official misconduct to assert a constitutional claim, it is substantial enough that not all insults in public debate become actionable under the Constitution."); *see also Valdez v. New Mexico*, 109 Fed. Appx. 257, 263 (10th Cir. 2004) ("The result of *Eaton* illustrates the rigorousness of our standard. . . . Plaintiff's allegations concerning the delivery of the television set, the prohibition of

contact with the Gonzaleses, the press conference reference to his possible connection with the reverse sting, the comment to the reporter, and the criminal complaint's mention of his name do not meet the subjective standard for a chilling effect."). "Applying that [vigorous, objective] standard, courts in this Circuit have [even] found that statements concerning the illegality or impropriety of a plaintiff's conduct are insufficient, standing alone, to support a First Amendment retaliation claim." *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1349 (D. Kan. 2023) (collecting cases) (citing *How v. City of Baxter Springs, Kan.*, 217 Fed. Appx. 787, 798 (10th Cir. 2007) (threat of criminal charges not injury that would chill person of ordinary firmness from continuing to exercise constitutional rights); *Valdez*, 109 Fed. Appx. at 263 (statements made to press regarding plaintiff's possible involvement in criminal activity not sufficient for First Amendment retaliation claim); *Taylor v. City of Claremore*, 2019 WL 3482965, at *9 (N.D. Okla. July 31, 2019) (statement that plaintiff had committed perjury would not chill person of ordinary firmness from continuing to engage in First Amendment activity). Accordingly, TPS, Ashlock, Mashburn, and Cloud are entitled to summary judgment on all of Plaintiff's First Amendment claims in Count II, VI, and VII.

### D. Individual Defendants Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is 'an immunity from suit rather than a mere defense to

liability.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Once a defendant has asserted a qualified immunity defense, "the plaintiff must meet a strict two-part test" to establish "'(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct[.]'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)); *see also Brown*, 662 F.3d at 1164 (same). Because the undersigned Magistrate Judge finds all remaining individual Defendants are entitled to summary judgment on the claims against them, Count II and Count VI, Plaintiff has therefore failed to create a genuine issue of material fact establishing that Defendants violated a constitutional or statutory right. Accordingly, the undersigned Magistrate Judge finds that Defendants Ashlock, Cloud, and Mashburn are entitled to qualified immunity in this case.

## II.    Plaintiff's Motion for Summary Judgment [Docket No. 171]

Plaintiff also filed a motion for summary judgment, asserting that the evidentiary record does not present a dispute, and that he should be entitled to summary judgment upon all claims. Upon review of the motion and as discussed above in the context of Defendants' Motion for Summary Judgment, the undersigned Magistrate Judge finds Plaintiff has not demonstrated "no genuine dispute as to any material fact" or that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shaw v. T-Mobile*, 2020 WL 5231309, at *6 (D. Kan. Sept. 2, 2020) (citing *MacCormack v. Cit of Prairie Village, KS*, 2001 WL 58838, at *4 (Jan. 17, 2001) (explaining even if court accepted plaintiff's unsupported "'fact[s]'" as true, "summary judgment would not be

proper because the plaintiff has shown no legal basis to justify summary judgment"). As noted above, Defendants are entitled to summary judgment on all claims except for Plaintiff's claim for retaliation pursuant to Title IX. As to the remaining claim, Plaintiff has not overcome his burden under the *McDonnell Douglas* framework to show *as a matter of law* that Defendant's legitimate, nondiscriminatory reason for his removal as a youth wrestling club coach and his removal from the substitute teaching list. Accordingly, Plaintiff's Motion for Summary Judgment [Docket No. 171] is denied.

**III.    Plaintiff's Motion for Sanctions [Docket No. 158]**

Finally, the undersigned Magistrate Judge acknowledges Plaintiff's Moton for Sanctions Under Fed. R. Civ. P. 11 and Integrated Brief [Docket No. 158]. This motion is the subject of a show cause hearing set for Tuesday, March 17, 2026, before the undersigned Magistrate Judge [Docket No. 180]. An appropriate ruling on this motion and any related matters shall be issued following that hearing.

**CONCLUSION**

Accordingly, the School District Defendants' Combined Motion for Summary Judgment and Brief in Support [Docket No. 144] is DENIED as to Count I, with regard to Plaintiff's claim of Title IX retaliation related to his removal from the youth wrestling coach position and from the substitute teaching lists, but otherwise GRANTED. Defendants Ashlock, Cloud, and Mashburn are entitled to qualified immunity. Additionally, Plaintiff's Motion for Summary Judgment [Docket No. 171] is DENIED. Furthermore, the undersigned Magistrate Judge holds Plaintiff's Motion for Sanctions

under Fed. R. Civ. P. 11 and Integrated Brief [Docket No. 158] in abeyance pending the

show cause hearing set for Tuesday, March 17, 2026.

    IT IS SO ORDERED this 5th day of March, 2026.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**