IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

OSCAR BROWNFIELD,                      )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )   Case No. CIV-21-312-GLJ
                                       )
CHEROKEE COUNTY SCHOOL                 )
DISTRICT NO. 35,                       )
                                       )
            Defendants.                )

## OPINION AND ORDER

Before the Court is the *sua sponte* order of the Court for Plaintiff to show cause as to why sanctions should not be assessed for the filing of a document containing false or misleading information and citations [Dkt. 180]. On March 17, 2026, a hearing was held on the show cause order and Plaintiff's Motion for Sanctions under Fed. R. Civ. P. 11 and Integrated Brief [Dkt. 158]. *See* Docket No. 183. For the reasons stated below, the Court finds that an order of sanctions against Plaintiff under Fed. R. Civ. P. 11 is appropriate.

## I.   BACKGROUND

Plaintiff Oscar Brownfield filed this action against Defendants Independent School District No. 35 a/k/a Tahlequah Public Schools ("TPS") and various individuals in their individual and official capacities arising out of his experiences with the school district as a volunteer youth wrestling coach and substitute teacher. Plaintiff alleged claims under Title IX, Title VII, and the First Amendment pursuant to 42 U.S.C. § 1983. The only remaining

1

claim is Plaintiff's claim of Title IX retaliation against TPS related to his removal from the youth wrestling coach position and from the substitute teaching lists. *See* Docket No. 181.[1]

On November 20, 2025, Plaintiff filed his Motion for Sanctions Under Fed. R. Civ. P. 11 and Integrated Brief ("Sanctions Motion"). *See* Docket No. 158. Plaintiff's Sanctions Motion asserted that various Defendants and their counsel violated Fed. R. Civ. P. 11(b)(3) by presenting factual contentions in their Motion for Summary Judgment [Dkt. 144] that lacked evidentiary support and were known to be false when filed. In their response to the Sanctions Motion, Defendant identified multiple case citations that either did not exist, commonly referred to as fictitious citations or hallucinations, or did not stand for the legal proposition for which it was cited. *See* Docket No. 161, pp. 10-13. In their response, Defendants further sought sanctions against Plaintiff in the amount of their attorney's fees and costs for responding to the Sanctions Motion. *Id.*, pp. 7-8.[2]

After reviewing the Sanctions Motion and concurring with Defendants' concern over multiple case citations, the undersigned entered the Order that Plaintiff show cause as to why sanctions should not be assessed for the filing of a document containing false or misleading information and citations and set a hearing for March 17, 2026. *See* Docket No. 180. Subsequently, Plaintiff filed his Response to Minute Order and Pre-Hearing Brief Regarding Citations in Dockt No. 158 in which he acknowledged and admitted using Artificial Intelligence ("AI") to assist in organizing legal research for his Sanctions Motion

---

[1] On March 5, 2026, the Court dismissed all other claims and the remaining defendants except for TPS. *See* Docket No. 181.

[2] On March 17, 2026, Plaintiff's Sanctions Motion was denied. *See* Docket No. 184.

and not double-checking every citation in such motion.  *See* Docket No. 182.  Although acknowledging problems with some of the authorities he cited, Plaintiffs continued to argue sanctions against Defendant were supported by the factual record.  *Id*.  Plaintiff further informed the Court that the Sanctions Motion is the only pleading in which he used AI for legal citations and that he recently completed a two-month AI program offered by Johns Hopkins University, which covered topics such as AI hallucinations and ethical considerations.  *Id*.  Plaintiff also committed to not using AI for any further matter before this Court.  *Id*.

In addition to the show cause order, the Court also ordered Defendants' counsel to appear at the March 17, 2026 hearing and be prepared with an affidavit presenting itemized fees and costs related to responding to Plaintiff's Sanctions Motion.  At the hearing, Defendant presented the affidavit of Kent B. Rainey, counsel for Defendants, in which he set out that Defendants incurred a total of $7,032.00 in attorney's fees responding to the Sanctions Motion.  *See* Docket No. 183, Defendant's Hearing Ex. 1.

## II.    ANALYSIS

Federal Rule of Civil Procedure 11 provides, *inter alia*, that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney *or unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[ ] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b), (b)(2) (emphasis added).  At its core, an attorney or an unrepresented party who signs a

legal document certifies that they have "read the document, [have] conducted a reasonable inquiry into the facts and the law and [are] satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). "The central purpose of Rule 11 is to deter baseless filings in district court[.]" C*ooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). A failure to comply with such obligations may result in a sanction. *See* Fed. R. Civ. P. 11(c).

Determining whether sanctions are warranted involves two steps. *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988). The "court first must find that a pleading violates Rule 11." *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019) (quoting *Adamson*, 855 F.2d at 672). "At this step, the person signing the pleading's conduct is evaluated "under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Id.* at 1320 (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)). *See also Grays v. Blackhawk Acquisitions, LLC*, 2024 WL 3179541, at *1 (D. Colo. June 26, 2024) (The issue is whether counsel's or a pro se party's conduct was reasonable under the circumstances of the case) (citing *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)).

Second, if the conduct violates Rule 11, a court then imposes an appropriate sanction. *Adamson*, 855 F.2d at 672. Pro se parties are subject to Rule 11 and potential sanctions thereunder. *See*, *e.g.*, *Chumpitaz-Morales v. Bondi*, 2026 WL 382144, at *4 (10th Cir. Feb. 11, 2026) (finding the pro se parties' brief misrepresents the holdings of several

cases and the court may sanction parties who make such misrepresentations); *Harris v. Take-Two Interactive Software, Inc.*, 2025 WL 1310122, at *2 (D. Colo. May 6, 2025) ("The use of fictitious quotes or cases in filings may subject a party, including a pro se party, to sanctions pursuant to Federal Rule of Civil Procedure 11 as "pro se litigants are subject to Rule 11 just as attorneys are.") (quoting *Rasmussen v. Burnett*, 2025 WL 808364, at *3 (D. Colo. March 12, 2025)).  Courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation[.]"  Fed. R. Civ. P. 11(b), (c) advisory committee note to 1993 amendment.

Finally, because Plaintiff is proceeding *pro se*, the Court liberally construes his pleadings.  *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (requiring courts to liberally construe a *pro se* litigant's pleadings); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (a court construes a *pro se* party's pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers.").  Although *pro se* pleadings are held to a less stringent standard than ones drafted by lawyers, a *pro se* litigant must "'follow the same rules of procedure that govern other litigants.'"  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

### A. Plaintiff's Conduct Violates Rule 11(b)

In their response, Defendants identify eight cases cited in Plaintiff's Sanctions Motion that either do not exist, did not stand for the legal proposition for which it was cited, do not contain the quoted language, held the opposite of the holding represented by Plaintiff, or has facts and/or an outcome contrary to those represented by Plaintiff.  *See*

5

Docket No. 161, pp. 11-13.  Plaintiff does not challenge or dispute the inaccuracy of the case citations identified by Defendants.  Indeed, Plaintiff concedes he used a generative AI tool to assist in legal research for the Sanctions Motion and did not check those citations for accuracy.  *See* Docket No. 182.

"Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence.  While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent."  *Mattox v. Product Innovations Research, LLC*, 807 F.Supp.3d 1341, 1347 (E.D. Okla. 2025).  As the use of AI in legal representation has increased, so have incidences of fictitious or inaccurate citations resulting from such AI tools.  Presentation of inaccurate authorities in pleadings resulting from AI subject to the signing party to sanctions.  *See*, *e.g.*, *Hill v. Oklahoma*, 2025 WL 1840659, at *4 (W.D. Okla. July 3, 2025) ("[C]ourts have increasingly found the imposition of sanctions proper in response to an attorney's conduct in citing 'fake cases' that are 'hallucinations' generated by an artificial intelligence platform.") (citing *Wadsworth v. Walmart*, 348 F.R.D. 489, 495-496 (D. Wyo. 2025) (citing fake cases in a signed motion violated Rule 11(b)(2) and subjected attorneys to imposition of monetary sanctions); *Bunce v. Visual Technology Innovations, Inc.*, 2025 WL 662398 at *1 (E.D. Pa. Feb. 27, 2025) (imposing sanctions where the attorney filed two separate motions that cited two cases that could not be located "on any legal research tool . . . ."); *Ramirez v. Humala*, 2025 WL 1384161 at * 1 (E.D.N.Y. May 13, 2025) (collecting cases finding "the submission of nonexistent case citations in filings to the court to constitute sanctionable conduct" under Fed. R. Civ. P. 11(b)(2)).  Plaintiff admits he did not check the case

6

citations generated by AI and, thus, he did not conduct a reasonable inquiry into the law submitted in his Sanctions Motion. Therefore, the Court finds the Plaintiff's submission of a pleading containing fictitious cases and inaccurate cases references warrants sanctions.

### B. Sanctions

For the second step, the court imposes sanctions. *Adamson*, 855 F.2d at 672. A finding of subjective bad faith is not required to impose sanctions. *Burkhart ex rel. Meeks v. Kinsley Bank*, 804 F.2d 588, 589–90 (10th Cir. 1986). "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990); *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) ("The court must consider the purposes to be served by the imposition of sanctions and so limit its sanctions 'to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'") (quoting Fed. R. Civ. P. 11(c)(4)). An appropriate sanction should be the least severe sanction to adequately deter and punish. *White*, 908 F.2d at 684 (citing *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988); *Cabell v. Petty*, 810 F.2d 463, 466–67 (4th Cir. 1987)).

Acknowledging his use of AI assisted legal research in the Sanctions Motion, Plaintiff took the affirmative remedial step of completing a two-month AI program costing $1,800 that covered AI hallucinations and ethical issues prior to the show cause hearing. *See* Docket No. 182. Plaintiff further pledged not to use any generative AI tool in any future matter before this Court. *Id*. While the Court commends Plaintiff for

acknowledging his use of AI and taking responsibility for the inaccurate citations resulting therefrom, the Court must still consider the *White* factors in assessing an appropriate sanction. The saliant factors under the circumstances of this case are punishing present litigation abuse and compensating the victims of the litigation abuse. *Id*. Of note, Defendants' counsel spent time searching for and analyzing the authorities cited in the Sanctions Motion. Although not broken down specifically in Mr. Rainey's affidavit, it is reasonable to conclude that Defendant's attorneys incurred time attempting to locate the authorities cited and reviewing those cases for the propositions for which Plaintiff cited them. *See* Docket No. 183, Defendant's Hearing Ex. 1. It is unclear, however, how much of the $7,032.00 in attorney's fees incurred in responding to the Sanctions Motion was incurred exclusively because of the fictitious or inaccurate citations generated by AI. Therefore, the Court declines to sanction Plaintiff for the full amount of the Defendant's claimed attorney's fees incurred for responding to the Sanctions Motion. Instead, Plaintiff is sanctioned $500 for his failure to comply with and meet his obligations under Fed. R. of Civ. P. 11(b) in submitting a pleading with fictitious and inaccurate citations. This represents approximately two hours of Ms. Albers billable hourly rate in researching and identifying such citations. Furthermore, this amount serves as both punishment for the presentation of such citations and compensates Defendant for legal expenses resulting therefrom. In conjunction with Plaintiff's representation of himself pro se in this matter, his candor and proactive remedial measures, and his pledge not to make further use of AI in this case, the Court believes this sanction is appropriate as the least severe sanction to adequately deter and punish Plaintiff's conduct. Plaintiff is admonished, however, that any

future filing of any improper pleading or other Rule 11 violation will likely result in a much more severe sanction.

## CONCLUSION

Accordingly, the Court hereby sanctions Plaintiff Oscar Brownfield pursuant to Rule 11 in the amount of $500 and further orders that he shall pay such amount to Defendant Independent School District No. 35 of Cherokee County a/k/a Tahlequah Public Schools by delivery to Defendant's counsel within thirty days of this Order.

IT IS SO ORDERED this 19th day of March, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**